1  **Andrew P. Holland/Bar No. 224737**
   aholland@thoits.com
2  **Mark V. Boennighausen/Bar No. 142147**
   mboennighausen@thoits.com
3  **Nathaniel H. Lipanovich/Bar No. 292283**
   nlipanovich@thoits.com
4  **THOITS LAW**
   A Professional Corporation
5  400 Main Street, Suite 205
   Los Altos, California 94022
6  Telephone:  (650) 327-4200
   Facsimile:  (650) 325-5572
7
   **Attorneys for Plaintiff**
8  **Bella+Canvas, LLC**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| BELLA+CANVAS, LLC,<br><br>                     Plaintiff,<br><br>         v.<br><br>TSC APPAREL, LLC, an Ohio limited liability company; and DOES 1 through 20, inclusive,<br><br>                     Defendants. | Case No.:   2:20-cv-05947-JWH-AS<br><br>**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT**<br><br><u>**JURY TRIAL DEMANDED**</u> |
|---|---|

1

FIRST AMENDED COMPLAINT

Plaintiff Bella+Canvas, LLC ("Plaintiff" or "B+C") alleges against Defendant TSC Apparel, LLC ("TSC"), and Does 1 through 20 (collectively "Defendants"), as follows:

## THE PARTIES

1. B+C is, and at all times herein mentioned was, a California limited liability company with its principal place of business located in Los Angeles County, California.

2. Upon information and belief, TSC is an Ohio limited liability company with distribution centers in various states including one in Fullerton, California.

3. The true names and capacities whether individual, corporate, associate, or otherwise, of the defendants named herein as Does 1 through 20, inclusive, are unknown to B+C and therefore they are sued under fictitious names.

4. B+C is informed and believes, and on that basis alleges, that each defendant designated as a Doe is responsible in some manner for the events described below and caused injuries and damages proximately thereby to B+C, and that the Defendants were the agents, servants, and employees of each other and were acting at all times within the course and scope of said agency, service, and employment, and otherwise acted jointly in concert or conspiracy.

## JURISDICTION AND VENUE

5. This Court has diversity jurisdiction pursuant to 28 U.S.C. 1332, because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

6. Venue is proper in this Court pursuant to 28 U.S.C. 1391(b)(2) as a substantial part of the events giving rise to the claim occurred in this District.

7. TSC is a major purchaser of apparel from B+C and has purchased millions of dollars in apparel from B+C over the last several years. This apparel is typically shipped from B+C's facility in this District. The parties' agreement was also negotiated in this District, with B+C being located in this District. There have also been discussions about the parties' agreements and their terms that have taken place between the principals in California, including at a trade show in Long Beach, California.

8. On information and belief based on TSC's statements on its website, TSC serves all of California with one-day shipping based on its distribution center in Fullerton, California. The center in Fullerton, California includes a showroom and permits customers to pick up orders or have orders shipped from that location to them. On information and belief, TSC regularly attends trade shows in California, including an annual one held in Long Beach, California.

## GENERAL ALLEGATIONS

9. B+C is in the business of design, manufacture, distribution, and sale of apparel products in multiple channels of distribution.

10. On information and belief, TSC is a clothing supplier that sells and/or re-sells apparel to its customers.

11. TSC has purchased millions of dollars in apparel from B+C over the last several years.

12. As set forth below, TSC breached agreements with B+C by failing to make timely payment for apparel that TSC has ordered and received.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract - Invoices)**

13. B+C realleges and incorporates herein each and every allegation in the preceding and foregoing paragraphs.

14. B+C and TSC have a contract for the purchase and sale of apparel based on invoices submitted by B+C to TSC for orders placed by TSC. Each invoice identifies the apparel ordered by TSC and the price. B+C sends out invoices when a product ships to its customer, and thus all products that are subject to B+C invoices have been shipped to TSC.

15. Under the terms of these invoices, the payment terms are either Net 30, Net 60, or Net 90, as set forth on each invoice. The vast majority of the unpaid invoices at issue have Net 60 payment terms. This means that payment was due within 60 days.

16. There are over 4,000 invoices that TSC has not paid. The unpaid invoices are dated between May 11, 2017 and May 20, 2020, although the vast majority are from June 2019 or later. The total amount due on these invoices is over four million dollars.

17. B+C substantially performed its obligations under the parties' agreement, including by providing apparel to TSC as set forth in each invoice, or B+C was excused from such performance.

18. TSC breached the parties' agreement as set forth in the proceeding allegations, including without limitation by not paying millions of dollars within the time period set forth on B+C's invoices and by TSC never paying for millions of dollars in apparel that TSC received. As of the date of this First Amended Complaint, TSC owes millions of dollars to B+C for unpaid apparel.

19. TSC's breach of the parties' agreement harmed B+C, including without limitation based on the millions of dollars that has not been paid by TSC for apparel that TSC ordered from B+C and has received from B+C.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract – Incentive Agreement)

20. B+C realleges and incorporates herein each and every allegation in the preceding and foregoing paragraphs.

21. B+C and TSC had an agreement governing incentives and rebates. Pursuant to this agreement, TSC could earn incentives and rebates based on its sales of B+C apparel. This agreement was memorialized in writing in a 2019 Incentive Agreement that was signed in June 2019. It was further memorialized in an agreement for 2020 that was negotiated between the parties but never signed. The details on how TSC's incentive payments are calculated are confidential information to B+C.

22. As memorialized in the 2019 Incentive Agreement, TSC was able to earn performance incentives based on its sales volumes as compared to sales volumes from prior time periods. *See* 2019 Incentive Agreement p. 1. TSC was advanced over $1 million in performance incentives under this agreement based on its sales performance.

23. As memorialized in the 2019 Incentive Agreement, TSC could earn CRC rebates based on the number of units sold by TSC that are eligible for the rebates. *See* 2019 Incentive Agreement p. 3-4. The agreement states in relevant part that "When TSC participates in a CRC promotion and complies with all CRC promotion requirements as outlined by BELLA+CANVAS, TSC will be eligible to receive a CRC promotion rebate." *Id*. TSC has received over $1 million in CRC rebates since the start of the 2019 Incentive Agreement.

24. As memorialized in the 2019 Incentive Agreement, the parties agreed to certain required Payment Terms under which TSC must pay for products ordered from B+C within a set time period. Specifically, payments terms are Net 60, meaning that invoices must be paid within 60 days. *See* 2019 Incentive Agreement p. 2.

25. As memorialized in the 2019 Incentive Agreement, the parties also agreed to limit TSC's ability to cancel orders or make returns without B+C's permission, stating that: "Cancelled purchase orders, rescheduled shipments or other product changes requested by TSC are subject to pre-approved acceptance by BELLA+CANVAS." *See* 2019 Incentive Agreement p. 4.

26. The substance of the terms set forth in paragraph 23-25 was agreed to by the parties prior to June 2019 and continued to govern the parties' relationship into 2020 while the parties negotiated a new incentive agreement for 2020. B+C and TSC understood and agreed that TSC could continue to earn (and in fact was advanced) CRC rebates, that payment terms were Net 60, and that TSC could not cancel or return orders without B+C pre-approval.

27. B+C substantially performed its obligations under the parties' agreement, including by providing apparel to TSC when ordered and by advancing millions of dollars of incentives and CRC rebates to TSC, or B+C was excused from such performance.

28. TSC breached the parties' agreement as set forth in the proceeding allegations, including without limitation by not paying millions of dollars owed within the Net 60 payment terms (or at any time). As of the date of this Amended Complaint, TSC still owes millions of dollars to B+C for these unpaid and past due invoices, despite having been advanced incentive payments and CRC rebates based (at least in part) on these unpaid orders.

29. TSC also breached the parties' agreement by cancelling orders without B+C's pre-approval.

30. TSC's breach of the parties' agreement harmed B+C, including without limitation based on the millions of dollars that has not been paid by TSC for apparel that TSC received from B+C and by the millions of dollars in incentives and CRC rebates that were advanced to TSC. B+C has also been harmed by hundreds of thousands of dollars in cancelled orders that were cancelled in breach of the parties' agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against TSC as follows:

1. That B+C is awarded all of its special, consequential, and compensatory damages as permitted by law;
2. For prejudgment interest as permitted by law;
3. For reasonable costs;
4. For such other and further relief as the Court deems just and proper.

## JURY DEMAND

B+C hereby demands trial by jury for this action.

Dated: October 7, 2020

**THOITS LAW**

By: */s/ Andrew P. Holland*

Andrew P. Holland
**Attorneys for Plaintiff
Bella+Canvas, LLC**