**Andrew P. Holland/Bar No. 224737**
aholland@thoits.com
**Mark V. Boennighausen/Bar No. 142147**
mboennighausen@thoits.com
**Nathaniel H. Lipanovich/Bar No. 292283**
nlipanovich@thoits.com
**THOITS LAW**
A Professional Corporation
400 Main Street, Suite 205
Los Altos, California 94022
Telephone:  (650) 327-4200
Facsimile:  (650) 325-5572

**Attorneys for Plaintiff**
**Bella+Canvas, LLC**

**THOITS LAW**
A PROFESIONAL CORPORATION

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BELLA+CANVAS, LLC,** | Case No.:   2:20-cv-05947-JWH-(AS) |
| Plaintiff, | The Hon. John W. Holcomb |
| v. | **BELLA+CANVAS, LLC'S OPPOSITION TO TSC APPAREL, LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| **TSC APPAREL, LLC, an Ohio limited liability company; and DOES 1 through 20, inclusive,** | |
| Defendants. | Date:            December 4, 2020<br>Time:            9:00 a.m.<br>Courtroom:   2<br>Trial Date:    None |

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION.................................................................... 1

II.     LEGAL STANDARD ............................................................. 2

III.    PROCEDURAL HISTORY AND FIRST AMENDED COMPLAINT . 3

IV.     ARGUMENT ........................................................................ 5

        A.     Claim 1:  The FAC States A Claim For Breach of Contract
               Based On Invoices Sent To TSC To Confirm TSC's Orders ...... 5

               1.     The FAC Alleges The Existence Of A Contract And
                      The Specific Terms That Have Been Breached............... 5

               2.     The FAC Alleges TSC's Breach................................. 9

               3.     There Is No Statute of Limitations Issue ...................... 9

        B.     Claim 2:  The FAC States A Claim For Breach of Contract
               Based On The Parties' Incentive Agreement ........................ 10

               1.     The Majority Of TSC's Arguments Were Not Part Of
                      The Parties' Meet and Confer Or Were Resolved
                      During The Meet And Confer................................... 11

               2.     The FAC Sufficiently Alleges That TSC's Failure To
                      Pay For Orders Is A Breach Of Contract .................... 12

               3.     The FAC Sufficiently Alleges That TSC's Cancellation
                      Of Orders Is A Breach Of Contract ........................... 13

               4.     TSC Admitted The Purported Issues With Rebates and
                      Incentives Were Resolved At The Meet And Confer....... 14

               5.     The FAC Sufficiently Alleges That The Terms Of The
                      2019 Agreement Continued Into 2020 ........................ 15

V.      IF THE COURT IS INCLINED TO GRANT THE MOTION TO
        DISMISS, LEAVE TO AMEND SHOULD BE GIVEN ................ 16

VI.     CONCLUSION .................................................................... 18

i

BELLA+CANVAS OPP. TO TSC'S MOTION TO DISMISS FAC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**THOITS LAW**
A PROFESIONAL CORPORATION

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)…………………………………… 1, 3

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ……………………… 2

*C9 Ventures v. SCV–West, L.P.*, 202 Cal. App. 4th 1483 (2012) ……….. 7, 8

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
  222 Cal. App. 3d 1371 (1990) ………………………………………… 5

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048
  (9th Cir. 2003) …………………………………………………3, 16, 17

*Estate of Gonzales v. Hickman*, No. 05-00660 MMM (RCX), 2006 WL
  4959780, at *16 (C.D. Cal. Jan. 30, 2006) ……………………………… 15

*Foman v. David*, 371 U.S. 178 (1962) ……………………………… 17, 18

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246 (9th Cir. 1997) ……………… 3

*J D Factors, LLC v. Reddy Ice Holdings Inc.*, No.
  CV1406709DDPFFMX, 2016 WL 6996152, at *1 (C.D. Cal.
  June 6, 2016) …………………………………………………………… 8

*Jackson v. Rhino Entertainment Co.*, No. CV1601668BROPJWX, 2016
  WL 11002546, at *5 (C.D. Cal. Nov. 10, 2016) ……………………… 14

*Lumens Co. v. GoEco LED, LLC*, 807 F. App'x 612 (9th Cir. 2020) ……… 7

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025 (9th Cir.
  2008) …………………………………………………………………… 2

*Neal v. Quality Loan Service Corp.,* 301 F. App'x at 680 …………………… 12

*Park v. Morgan Stanley & Co.*, No. 2:11-CV-9466-ODW, 2012 WL
  589653, at *3 (C.D. Cal. Feb. 22, 2012) …………………………… 13

*Supermail Cargo, Inc. v. United States*, 68 F.3d 1204 (9th Cir. 1995) ……. 10

*Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305 (2009) …………… 15

*Twaite v. Allstate Ins. Co.*, 216 Cal. App. 3d 239 (1989)…………………… 5

*Yujin Robot Co. v. Synet Elecs. Inc.*, No. CV1406237SJOASX, 2015
  WL 12762254, at *7 (C.D. Cal. Dec. 22, 2015) …………………… 7

**Statutes**

California Code of Civil Procedure Section 337 ………………………… 9

ii

BELLA+CANVAS OPP. TO TSC'S MOTION TO DISMISS FAC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**THOITS LAW**
A PROFESIONAL CORPORATION

**Rules**

Federal Rule of Civil Procedure 8(a) …………………………………………… 2

Federal Rule of Civil Procedure 8(b)(3)…………………………………… 2

Local Rule 7-3 ………………………………………………………… 11

BELLA+CANVAS OPP. TO TSC'S MOTION TO DISMISS FAC

THOITS LAW
A PROFESIONAL CORPORATION

## I.   INTRODUCTION

Unlike many state jurisdictions, federal courts only require notice pleading. Thus, a motion to dismiss asks only whether a claim makes sufficient allegations "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The First Amended Complaint ("FAC") plainly provides notice and the basis for the relief it seeks as it alleges that TSC placed over 4,000 orders for apparel from B+C, that TSC received those orders, and that B+C sent invoices based on those orders. TSC failed to pay the amounts due for those orders and this is alleged to have been a breach of both the terms of each order (Claim 1) and the terms of the parties' separate incentive agreement (Claim 2).  The FAC additionally alleges as part of Claim 2 that TSC breached a specific contractual provision in the parties' incentive agreement related to the cancellation of orders.  The only reasonable inference that can be drawn from the FAC is that TSC's actions were a breach of contract and thus that B+C has stated a claim against TSC.

The alternative reality spun by TSC in its Motion To Dismiss ("Motion," Dkt. 29), ignores the allegations that TSC specifically ordered the product and received the products.  The Motion appears to claim that B+C shipped 4,000 orders to TSC, invoiced TSC for those orders, but that TSC has no obligation to pay.  Indeed, TSC ignores that the invoices provided to TSC are based on the *orders* placed by it.[1]  This commonplace practice of a customer placing an order and being invoiced for the order is a plausible commercial contractual transaction that meets federal pleading standards at this stage of the case.

As set forth below, TSC's arguments are an implausible reading of the FAC and should be rejected.  Indeed, the arguments ignore the allegations of

---

[1] As TSC is well aware, and as alleged in the FAC, invoices were only sent to B+C after TSC placed an order and the order was shipped by B+C to TSC. FAC ¶ 14.

BELLA+CANVAS OPP. TO TSC'S MOTION TO DISMISS FAC

the FAC, and they even ignore the admissions made by TSC during the parties' meet and confer. For example, the Motion feigns ignorance about the FAC's allegations related to incentive payments, asserting that they "leave[] TSC guessing what actually is alleged against it and why." Motion at 10:2-3. But TSC doesn't need to guess: It can ask its counsel, who admitted during the parties' meet and confer that the issue raised by TSC with respect to incentives and rebates had been clarified and resolved by the parties' discussion. This was specifically confirmed in an email by B+C's counsel. *See* Lipanovich Decl. ¶ 4 & Ex. 3 (Email Following Meet and Confer) ("During our meet and confer, we were able to clarify and resolve the issues identified in TSC's meet and confer letter with respect to the rebates and incentives"). TSC's counsel responded to this email and did not dispute this. *Id.* at Ex. 3.

In short, TSC has notice of B+C claims and their legal basis. That is sufficient under federal pleading rules. TSC's gamesmanship should not be permitted, and TSC's Motion should be denied.

## II.    LEGAL STANDARD

Federal court plaintiffs are required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Rule 8 recognizes that a plaintiff may plead "relief in the alternative or different types of relief." Fed. R. Civ. P. 8(b)(3).

BELLA+CANVAS OPP. TO TSC'S MOTION TO DISMISS FAC

To survive a 12(b)(6) motion to dismiss, a plaintiff must allege only "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697. The issue is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Thus, "[a] motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Id.*

Leave to amend "shall be freely given." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).

## III.   PROCEDURAL HISTORY AND FIRST AMENDED COMPLAINT

B+C filed its Complaint (Dkt. 1) against TSC on August 10, 2020. TSC filed a motion to dismiss, and with respect to the breach of contract claim it only challenged two elements:  the existence of a contract and damages.  On the first element, Judge Klausner found that, based on the allegation in the Complaint, "[w]hile the Court can reasonably infer that Plaintiff bases these breaches on the specific terms in the parties' agreements, the Court cannot deduce which terms of which contracts Defendant allegedly breached."  Dkt. 26 ("Order") at 3.  Thus the Court held that B+C needed to "identify the specific terms of the specific agreements that Defendant allegedly breached."  *Id.*  On the damages element, Judge Klausner rejected TSC's demand for more specificity, and found that allegations of damages for "hundreds of thousands" of dollars in cancelled orders and "millions of dollars" in other damages were sufficient at the pleading stage.  *Id.* at 4.[2]

In response to the Order, B+C filed a FAC that specifically alleges each contractual term that TSC breached and the contract that it came from.  First, for Breach of Contract – Invoices, the FAC alleges that TSC placed orders with B+C and that after each order "B+C sends out invoices when a

_____
[2] Judge Klausner also dismissed two other claims which are no longer at issue.

THOITS LAW
A PROFESIONAL CORPORATION

product ships to its customer, and thus all products that are subject to B+C invoices have been shipped to TSC." FAC ¶ 14. As evidence in these invoices, "the payment terms are either Net 30, Net 60, or Net 90," meaning that, e.g., payment is due within 60 days. FAC ¶ 15. TSC breached "by not paying millions of dollars within the time period set forth on B+C's invoices and by TSC never paying for millions of dollars in apparel that TSC received." FAC ¶ 18.

Second, for Breach of Contract – Incentive Agreement, there are two alleged contractual terms that TSC is alleged to have breached. Each is recited and pin cited.[3] Under the parties' incentive agreement, "payment terms are Net 60, meaning that invoices must be paid within 60 days." FAC ¶ 24 (citing 2019 Incentive Agreement, p. 2). TSC breached this contractual term "by not paying millions of dollars owed within the Net 60 payment terms (or at any time)." FAC ¶ 28. Additionally, the incentive agreement requires that "'Cancelled purchase orders, rescheduled shipments or other product changes requested by TSC are subject to preapproved acceptance by BELLA+CANVAS.'" FAC ¶ 25 (quoting 2019 Incentive Agreement, p. 4.). TSC is alleged to have breached this provision "by cancelling orders without B+C's pre-approval." FAC ¶ 29.

The FAC also contains additional allegations related to damages, which the Court already concluded were sufficient. This includes allegations related to millions of dollars in damages related to incentives and rebates, FAC ¶ 30, and allegations related to hundreds of thousands of dollars in cancelled orders. *Id.* The contractual provisions related to these incentives and rebates are also set forth in detail in the FAC. *E.g.* FAC 22-23.

---

[3] The 2019 Incentive Agreement contains confidential information related to how B+C calculates incentive payments, and thus the agreement is not attached to the FAC. However, all material terms that are alleged to have been breached are set forth in detail in the FAC, and TSC has a copy of the 2019 Incentive Agreement, readily putting it on notice of the allegations.

BELLA+CANVAS OPP. TO TSC'S MOTION TO DISMISS FAC

THOITS LAW
A PROFESIONAL CORPORATION

1   **IV.   ARGUMENT**

2       **A.   Claim 1:  The FAC States A Claim For Breach of Contract**

3          **Based On Invoices Sent To TSC To Confirm TSC's Orders**

4       A breach of contract claim has four elements:  (1) the existence of a

5   valid contract; (2) plaintiff's performance or excuse for nonperformance; (3)

6   defendant's breach; and (4) resulting damage to the plaintiff.  *Careau & Co.*

7   *v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1388 (1990).  The

8   Motion appears to challenge only the existence of a valid contract (element 1)

9   and its breach (element 3).

10       **1.   The FAC Alleges The Existence Of A Contract And The**

11          **Specific Terms That Have Been Breached**

12       The Court's Order explained that the B+C needed to be clarify "which

13   terms of which contracts Defendant allegedly breached."  Order at 3.  The

14   FAC does this specifically by creating two causes of action for breach of

15   contract.  In the first claim for Breach of Contract – Invoices, B+C explained

16   the interactions between the parties where first TSC places an order with

17   B+C, and then B+C ships the order and confirms it with an invoice.  FAC ¶

18   14.  The material term that is alleged to have been breached is that the invoice

19   must be paid within either 30, 60, or 90 days.  FAC ¶ 15.  The FAC alleges

20   that there have been over 4,000 orders placed by TSC, shipped by B+C,

21   invoiced by B+C, but not paid for by TSC.  FAC ¶ 16.  The date ranges of

22   these invoices are also given.  *Id.*  The fact that TSC is required to pay for

23   apparel that it ordered and received is hardly controversial, and yet TSC

24   spends three pages of the Motion trying to avoid this basic obligation.

25       First, TSC argues that B+C is required to set forth the terms of the

26   contract "according to legal effect."  Motion at 7:3-4 (quoting *Twaite v.*

27   *Allstate Ins. Co.*, 216 Cal. App. 3d 239, 252 (1989)).  As set forth above, this

28   was done as the relevant terms of the contract for each order are the payment

terms and they are recited in detail.  To the extent that the Motion implies that B+C is required to attach each order or invoice to the FAC, TSC has already made clear this is not its position.  *See* Lipanovich Decl. Ex. 3 (TSC's counsel explaining that "I stated that you did not have to attach all '4000 invoices' to the operative complaint.").

Second, TSC argues that the FAC supposedly "fails to allege *any* essential terms of a specific contract or contracts that TSC purportedly breached."  Motion at 7:17-18.  Yet once again, this completely ignores the specific allegations in the FAC that TSC was required to pay for products it ordered within either 30, 60, or 90 days, and that TSC failed to do so.  FAC ¶¶ 14-16.

Unable to avoid the fundamental allegations of the FAC, the Motion instead tries to create a sideshow to distract the Court.  The Motion claims that the FAC "only alleges the terms of the invoices," and that invoices alone are not contracts.  Motion at 7:25-28.  This ignores the allegations in the FAC that make clear the invoices were an acceptance of orders that TSC placed, and that they were only sent after the apparel was shipped to TSC.  FAC ¶ 14.  Thus the invoices merely confirmed the terms of the orders placed by TSC and they did not contain any new terms that B+C is now trying to enforce.  In basic contract terms:  the order is the offer by TSC to buy product.  The shipment of the product and following invoice is the acceptance of the offer by B+C.  The invoice is evidence of both the offer and the acceptance.  Failure to pay for these orders is TSC's breach. Notably, TSC does not dispute that it placed orders, was required to pay for them, and that it has failed to make payments.

Faced with a similar situation, the Ninth Circuit has concluded that even though invoices are not themselves contracts, "contracts between the parties were formed when [defendant] sent [plaintiff] an offer, in the form of a

THOITS LAW
A PROFESIONAL CORPORATION

6

THOITS LAW
A PROFESIONAL CORPORATION

1  purchase order, and [plaintiff] accepted the offer by shipping the goods."

2  *Lumens Co. v. GoEco LED, LLC*, 807 F. App'x 612, 616 (9th Cir. 2020).  In

3  that situation, the Ninth Circuit held that the parties had a contract and

4  invoices were "evidence of the parties' contract."  *Id.*  And even if an invoice

5  is the *only* writing that confirms the existence of a contract (which is not the

6  situation between B+C and TSC), courts have granted summary judgment

7  and found breach of contract as a matter of law when the evidence shows that

8  the defendant placed orders, received those orders, and did not pay for them.

9  *See Yujin Robot Co. v. Synet Elecs. Inc.*, No. CV1406237SJOASX, 2015 WL

10  12762254, at *7 (C.D. Cal. Dec. 22, 2015) ("Although Yujin has not pointed

11  to any writing other than the invoices demonstrating that Yujin agreed to ship

12  units in exchange for Synet's payment, it is undisputed that Synet ordered,

13  received, and accepted the 2,240 shipped units and subsequently entered

14  purchase orders with retailers for 2,163 of these units.").  Taking the facts in

15  the FAC as true, B+C has sufficiently alleged that TSC placed orders, B+C

16  shipped products based on those orders and TSC failed to pay for the products

17  when invoiced.  These are sufficient allegations to maintain a claim for breach

18  of contract.

19      The FAC's allegations whereby the invoices simply confirm orders

20  placed by TSC after the product has been shipped makes the Motion' case law

21  readily distinguishable.  *C9 Ventures*, for example, is not a pleading case.

22  There, the reviewing court was examining contractual issues based on

23  stipulated facts.  And in that case, the parties had a contract based on an order

24  and then acceptance of that order, and the question before the court was

25  whether the plaintiff could additionally enforce an indemnification provision

26  that was on the back of an unsigned invoice.  *C9 Ventures v. SCV–West, L.P.*,

27  202 Cal. App. 4th 1483, 1501 (2012).  Here, the FAC raises no such issue as

28  to any disputed terms regarding the offer by TSC in ordering the goods at

7

issue, and the acceptance of that offer by the shipment of the goods and invoicing for those goods by B+C.

Here, to the contrary, B+C is merely asking that TSC be required to pay for the apparel that it ordered. *C9 Ventures* is also distinguishable because the court noted that in commercial transactions the terms of an invoice are controlling even if it is not signed or accepted. *Id.* at 1506 ("If [defendant] is considered to be a merchant, however, the additional terms of the invoice, including the indemnification provision, would become terms of the contract unless they materially altered the contract or [defendant] objected to them.").

Tellingly, all but one case cited by TSC dealt with summary judgment or followed a trial. TSC's only case on this issue that addressed a motion to dismiss is *J D Factors, LLC v. Reddy Ice Holdings Inc*. In that case, the plaintiff purchased accounts from a third party and then sued to enforce a contract between that third party and the defendant in order to collect on certain unpaid invoices. No. CV1406709DDPFFMX, 2016 WL 6996152, at *1 (C.D. Cal. June 6, 2016). Thus the plaintiff was not able to include any allegations in the complaint about what exactly was performed and what terms of the contract at issue was supposedly breached. That is very different from here, where this contract was between the two parties to this action. And the FAC alleges that TSC placed orders for apparel from B+C, received that apparel, and yet has not paid for the apparel.

In a similar vein, TSC claims that B+C has not alleged "mutual assent" or that TSC accepted the invoices. Motion at 8:6-12. Once again, this ignores the allegations related to the role of the invoices regarding the timing of the commercial transactions alleged in the FAC. The FAC makes clear that invoices were only sent to TSC *after* TSC had placed an order and after B+C had shipped the order to TSC. Thus the invoice represents evidence of

8

B+C's acceptance of TSC's order and confirms the parties' mutual assent. *Lumens*, 807 F. App'x at 616 (finding a contract based on an order being placed and shipped, and explaining that an invoice is evidence of a contract).

### 2.    The FAC Alleges TSC's Breach

In what appears to be a throwaway argument, TSC claims in a single sentence that "[a]dditionally, Plaintiff's conclusory allegations of breach are not supported by any facts and, thus, fail to give TSC fair notice of Plaintiff's claim and the grounds upon which it rests." Motion at 9:3-5. No portion of the FAC is addressed or cited, and the FAC sets forth in detail the number of invoices at issue ("over 4,000"), the dates of those invoices ("between May 11, 2017 and May 20, 2020"), the total amount due on these invoices ("over four million dollars") and the fact that they have not been paid. FAC ¶ 16. This clearly puts TSC on notice, and TSC's counsel has already admitted as much, stating during the meet and confer that B+C is not required to attach all 4,000 invoices to the FAC in order to state a claim. Lipanovich Decl. Ex. 3.

### 3.    There Is No Statute of Limitations Issue

TSC's also discusses the statute of limitations for a breach of contract claim, but does not actually ask the Court to dismiss the claim based on it. In an event, the statute of limitations argument fails for the same reasons discussed above. For every order at issue, there are at least two writings. First, there is the order placed by TSC that was submitted to B+C. FAC ¶ 14. Second, there is the invoice confirming the order submitted by B+C to TSC. *Id.* These allegations must be accepted as true, and thus they constitute a writing that evidences the parties' contract. Each writing contains the material term that is alleged to have been breached – i.e. Net 30, Net 60, or Net 90 payments terms. FAC ¶ 15. That makes the statute of limitations four years. Cal. Code Civ. Proc. § 337.

BELLA+CANVAS OPP. TO TSC'S MOTION TO DISMISS FAC

THOITS LAW
A PROFESIONAL CORPORATION

1   Notably, TSC fails to cite any case law for the proposition that the

2   statute of limitations is appropriately applied in these circumstances at

3   pleading stage.  "[A] complaint cannot be dismissed unless it appears beyond

4   doubt that the plaintiff can prove no set of facts that would establish the

5   timeliness of the claim." *Supermail Cargo, Inc. v. United States*, 68 F.3d

6   1204, 1207 (9th Cir. 1995).  Here, as set forth above, B+C will be able to

7   show, and has alleged, that a writing supports its claims for breach of

8   contract.  Thus the statute of limitations does not apply to any order or

9   invoice, and in any event is not appropriately decided on a motion to dismiss.

10   **B.**   **Claim 2:  The FAC States A Claim For Breach of Contract**

11   **Based On The Parties' Incentive Agreement**

12   As noted above, the Court's prior Order faulted the Complaint for "not

13   identify[ing] the specific terms of the specific agreements that Defendant

14   allegedly breached."  Order at 3.  On the allegations of damages, however,

15   the Court rejected TSC's argument that allegations of damages based on

16   "'hundreds of thousands' of dollars for the orders that were placed and then

17   cancelled, and 'millions of dollars' in products" was insufficient, holding that

18   additional "specificity is not required." *Id.* at 4.

19   As to the second claim, the FAC addressed the Order by alleging that

20   the parties signed a 2019 Incentive Agreement in June 2019.  The FAC quotes

21   specific provisions of the 2019 Incentive Agreement that were either breached

22   or that are relevant to damages. *E.g.* FAC ¶¶ 21-25.  The pages from the

23   2019 Incentive Agreement are even cited.  The FAC also explains how the

24   terms from the 2019 Incentive Agreement "continued to govern the parties'

25   relationship into 2020 while the parties negotiated a new incentive agreement

26   for 2020." FAC ¶ 26.  These terms include two specific provisions that TSC

27   is alleged to have breached:  (1) required Payment Terms under which TSC

28   had to make payments within 60 days (FAC ¶ 24) and (2) a provision

THOITS LAW
A PROFESIONAL CORPORATION

requiring that "Cancelled purchase orders, rescheduled shipments or other product changes requested by TSC are subject to preapproved acceptance by BELLA+CANVAS."  FAC ¶ 25.  Thus TSC is on notice of the contract and the contract terms that were allegedly breached.

### 1.   The Majority Of TSC's Arguments Were Not Part Of The Parties' Meet and Confer Or Were Resolved During The Meet And Confer

TSC provided a meet and confer letter to B+C in advance of the parties' required meet and confer under Local Rule 7-3.  Lipanovich Decl. Ex. 1.  Counsel for TSC confirmed that there were no other grounds on which TSC was challenging the FAC other than those set forth in the letter.  Lipanovich Decl. ¶ 3.  That letter identified just two purported issues with the claim for Breach of Contract – Incentive Agreement.  First, TSC argued that the allegations on cancelled orders were insufficient.  Lipanovich Decl. Ex. 1 at 3 (first full paragraph).  Second, TSC argued that the FAC failed to sufficiently allege that the contractual provisions on rebates and incentives were breached.  *Id.* at 3 (second full paragraph).  During the meet and confer, B+C's counsel explained that, as set forth in the FAC, the alleged breach was that TSC failed to pay for millions of dollars of apparel that it orders (FAC ¶ 28) and that TSC cancelled orders without preapproval (FAC ¶ 29).  Lipanovich Decl. ¶ 4.  B+C's counsel also explained the rebates and incentives were damages that flowed from these breached (FAC ¶ 30).  *Id.*  TSC's counsel responded that she understood, and that the issue with the rebates and incentives was "resolved."  *Id.*  This was confirmed in an email.  Lipanovich Decl. Ex 3 ("During our meet and confer, we were able to clarify

1  and resolve the issues identified in TSC's meet and confer letter with respect
2  to the rebates and incentives.").[4]

3       Given these admissions during meet and confer, the only argument
4  properly made in the Motion is the attack on cancelled orders (which should
5  be rejected as set forth below).  Indeed, the meet and confer concessions make
6  it plain that the Motion's argument that the FAC "leaves TSC guessing what
7  actually is alleged against it and why," e.g. Motion at 10:2-3, is false.  TSC
8  knows exactly what is alleged with respect to its breach because the specific
9  contract terms are quoted in the FAC.

10       **2.     The FAC Sufficiently Alleges That TSC's Failure To**
11              **Pay For Orders Is A Breach Of Contract**

12       The Motion argues that the FAC does not allege that TSC breached the
13  contractual requirement that TSC pay for orders within 60 days.  Motion at
14  10:6-27.  There was no mention of this argument in meet and confer letter
15  (Lipanovich Decl. Ex. 1) and the reason is obvious:  The Motion itself
16  disproves this claim, quoting allegations from the Complaint that TSC
17  breached by "'not paying millions of dollars owed within the Net 60 payment
18  terms (or at any time.'"  Motion at 10:10-13 (quoting FAC ¶ 28).  The
19  Motion also quotes allegations that "TSC still owes millions of dollars to
20  [Plaintiff] for these unpaid and past due invoices . . . ."  Motion at 10:15-16
21  (quoting FAC ¶ 28).  These allegations are sufficient to allege a breach.

22       TSC cites one case for this proposition, which is this an unpublished
23  Ninth Circuit decision addressing a pro se complaint.  *Neal v. Quality Loan*
24  *Service Corp.,* 301 Fed. App'x 679, 680 (9th Cir. 2008).  It consists of four
25  sentences with no analysis of the allegations at issue or why there were
26  insufficient.  *Id.*

27
28  [4] TSC responded to this email and did not dispute that the issue was resolved.
    Lipanovich Decl. Ex. 3.

THOITS LAW
A PROFESIONAL CORPORATION

BELLA+CANVAS OPP. TO TSC'S MOTION TO DISMISS FAC

At the motion to dismiss stage, allegations need only be plausible and all reasonable inferences should be drawn in favor of the plaintiff.  Here, it is alleged, or at a minimum reasonable inferred, that the above allegations demonstrate TSC's breach of the incentive agreement's payment terms.

### 3.   The FAC Sufficiently Alleges That TSC's Cancellation Of Orders Is A Breach Of Contract

TSC's argument with respect to cancelled orders is a repeat of the arguments from its first motion to dismiss on damages.  TSC argued in its prior motion that allegations of "hundreds of thousands of dollars in cancelled orders" did not give it fair notice of the alleged damages sought.  This was specifically rejected, and should be rejected again here.  Order at 4.

The only deficiency cited in the Order was that the specific contractual provisions were not clearly identified.  In response, the FAC now quotes the contractual term related to cancellation of orders:

As memorialized in the 2019 Incentive Agreement, the parties also agreed to limit TSC's ability to cancel orders or make returns without B+C's permission, stating that: "Cancelled purchase orders, rescheduled shipments or other product changes requested by TSC are subject to preapproved acceptance by BELLA+CANVAS." *See* 2019 Incentive Agreement p. 4.

FAC ¶ 25.  It is also alleged that this provision was breached when TSC cancelled orders without pre-approval, FAC ¶ 29, and the amount of damages (already found sufficient by the Court) is identified, FAC ¶ 30.

The Motion's cited case law on this point simply confirms that the FAC's allegations are sufficient.  For example, in *Park v. Morgan Stanley & Co.*, the court found that the plaintiff "fail[ed] to allege any specific terms of the contract he claims Defendants actually breached."  No. 2:11-CV-9466-ODW, 2012 WL 589653, at *3 (C.D. Cal. Feb. 22, 2012).  The court noted

BELLA+CANVAS OPP. TO TSC'S MOTION TO DISMISS FAC

THOITS LAW
A PROFESIONAL CORPORATION

1 that the allegations related to breach were conclusory because "Plaintiff does
2 not specify when and how Defendants supposedly contracted [for the allegedly
3 breached term]." *Id.* The same issue was present in a second case cited by
4 TSC on this point. In *Jackson v. Rhino Entertainment Co.*, the court found
5 that the existence of a contract had been alleged, but the plaintiff failed to
6 allege which part of the contract that defendants breached and alleged only
7 that defendants had failed to pay royalties. No. CV1601668BROPJWX, 2016
8 WL 11002546, at *5 (C.D. Cal. Nov. 10, 2016). This was an issue because
9 there were numerous royalty provisions in the contract and plaintiff did not
10 state which provision was breached. *Id.*

Here, the FAC is much different. The FAC precisely identifies the
"specific terms of the contract" related to the cancellation of orders that are
alleged to have been breached. The provision itself is quoted and the page
number where the provision appears in the 2019 Incentive Agreement is cited.
FAC ¶ 25. This is sufficient to give TSC fair notice of its alleged breach.

### 4. TSC Admitted The Purported Issues With Rebates and Incentives Were Resolved At The Meet And Confer

As noted above, the parties discussed the allegations related to
incentives and rebates and TSC agreed on the meet and confer that the issue
was resolved. Lipanovich Decl. ¶ 4 & Ex. 3. And as B+C explained during
the meet and confer to which TSC counsel concurred, the allegations related
to rebates and incentives are part of B+C's claim for damages based on
TSC's breaches of the 2019 Incentive Agreement. The connection between
the breach (e.g. not paying for orders placed) and the rebates and incentives is
apparent in the FAC. TSC was advanced rebates and incentives by B+C
based on orders placed by TSC. FAC ¶¶ 27-28. TSC was required to pay for
those orders, but it has failed to do so. As a result, TSC breached its
agreement with B+C to make payments on the required Net 60 terms, and

THOITS LAW
A PROFESIONAL CORPORATION

14

1    thus TSC must return the rebates and incentives.  *Id.*  TSC's arguments

2    related to the sufficiency of the FAC's damages allegations were already

3    rejected by the Court, Order at 4, and they should be rejected again here.

4         TSC's argument also has no legal basis.  TSC cites no support for the

5    proposition that this Court can determine causation as a matter of law on a

6    motion to dismiss, which seems to be what TSC is seeking.  In fact, the only

7    case cited by TSC, *Troyk v. Farmers Group, Inc.*, reviewed a summary

8    judgment decision by the trial court and concluded that there was a triable

9    issue on causation of damages.  171 Cal. App. 4th 1305, 1353 (2009).  This is

10   because causation is often a complicated issue involving factual disputes that

11   cannot be resolved on a motion to dismiss.  *See, e.g.*, *Estate of Gonzales v.*

12   *Hickman*, No. 05-00660 MMM (RCX), 2006 WL 4959780, at *16 (C.D. Cal.

13   Jan. 30, 2006) ("Questions of causation often involve factual disputes, which

14   cannot be resolved by the court on a motion to dismiss[.]").

15        **5.    The FAC Sufficiently Alleges That The Terms Of The**

16             **2019 Agreement Continued Into 2020**

17        The Motion also claims that "allegations of the unsigned modification of

18   the underlying Incentive Agreement are unsupported by any facts."  Motion at

19   12:14-26.  Once again, this position appears nowhere in TSC's meet and

20   confer letter.  *See* Lipanovich Decl. Ex. 1 (TSC Meet and Confer Letter).  If

21   the issue had been raised, B+C would have explained that TSC wrongly

22   claims that "the terms of the 2019 Incentive Agreement were changed 'in an

23   agreement for 2020 that was negotiated by the parties *but never signed*.'"

24   Motion at 12:15-16 (quoting FAC ¶ 21).  This is not what the FAC alleges.

25   The FAC does not allege a "modification" or "change" to the agreement;

26   instead, "[t]he substance of the terms set forth in paragraph 23-25 was agreed

27   to by the parties prior to June 2019 and continued to govern the parties'

28   relationship into 2020 while the parties negotiated a new incentive agreement

15

THOITS LAW
A PROFESIONAL CORPORATION

for 2020." FAC ¶ 26.  Thus the entirety of the argument in the Motion is based on a misreading of the FAC.

## V.   IF THE COURT IS INCLINED TO GRANT THE MOTION TO DISMISS, LEAVE TO AMEND SHOULD BE GIVEN

As set forth above, the FAC resolves the concerns raised by the Court's prior Order and puts TSC on notice of its breach of contract, including the specific provisions that are alleged to be breached.  However, in the unlikely event that the Court requires further specificity or additional allegations, then the Court should grant leave to amend.  *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (leave to amend "shall be freely given").

Specifically, to the extent there are any issues with the breach of contract allegations related to TSC's purchase orders and B+C's corresponding invoices (Claim 1), B+C can add additional details about the order process and allegations that make clear that the material terms at issue (e.g. the payment terms) are the same in purchase order, the shipment, and the invoice (although TSC already has the purchase orders and invoices so it shouldn't be necessary).  While TSC has already confirmed that it is not needed, see Lipanovich Decl. Ex. 3, B+C can also add additional details about the specific invoices that have not been paid.  Notably, none of the arguments in the Motion on invoices, breach, or the statute of limitations were raised in the first motion to dismiss.  Thus this would be B+C's first amendment in response to these arguments.

To the extent that there are issues with the breach of contract allegations related to the incentive agreement (Claim 2), B+C can also add allegations to address them.  For example, B+C could add additional details about which orders were cancelled (although as the party that cancelled the orders TSC already has this knowledge).  B+C could also add allegations clarifying the

THOITS LAW
A PROFESIONAL CORPORATION

16

issues on rebates and incentives (although TSC admitted it understood the current allegations during the parties' meet and confer). Finally, B+C can add additional facts regarding the orders that TSC failed to pay for and the incentive agreement terms that were breached. These arguments in the Motion are also new, and in fact many were not even raised in the parties' meet and confer. Thus B+C should be permitted to amend to address them.

As a further note, following the meet and confer TSC stated that it would stipulate to permit B+C to amend the FAC. Lipanovich Decl. Ex. 2. B+C declined to amend because, as set forth above, it has stated a claim against TSC. However, TSC's previous willingness to permit B+C to amend confirms that TSC's current position that no amendment could cure the alleged deficiencies is unsupported and that leave to amend is appropriate.

TSC's main point on amendment relies on the often-used reference to "bites at the apple." This, of course, is not the standard for whether leave should be granted nor is it factually accurate because almost all of the alleged deficiencies raised in the Motion were not previously identified by TSC. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1053 (9th Cir. 2003) (reversing dismissal of complaint with prejudice after "three bites at the apple" because "plaintiffs' allegations were not frivolous and that they were endeavoring in good faith" to meet the pleading standards). The factors used to determine whether leave to amend should be granted are set out *Foman v. Davis*:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

17

*Eminence Capital*, 316 F.3d at 1052 (quoting *Foman v. David*, 371 U.S. 178, 182 (1962).  None of the factors that might weigh against granting leave to amend are present here.  The primary factor – prejudice to the opposing party – is certainly not met, as there is no prejudice to TSC from TSC having to pay for orders that it has placed and received.  Leave to amend should be given.

## VI.    CONCLUSION

For the reasons set forth above, the Motion should be denied.

Dated:  November 13, 2020

THOITS LAW

By   */s/ Nathaniel Lipanovich*

Andrew P. Holland
Mark V. Boennighausen
Nathaniel H. Lipanovich
Attorneys for Plaintiff
Bella+Canvas, LLC

**THOITS LAW**
A PROFESIONAL CORPORATION

BELLA+CANVAS OPP. TO TSC'S MOTION TO DISMISS FAC